During that time, they labored with great activity and good judgment. Every man was employed to the extent of his ability. Some additional fatigue and delay were also incurred in towing the Wave, and in coming to anchor with her once before reaching Prince's Bay, but those services were not attended with any extra hazard of life or property. The pilot-boat was valued at from $2.500 to $3,000. These circumstances show nothing which exalts the salvage in this case to one meriting a prodigal reward. Courts do not look alone at the benefits received by the owner of the property saved. They regard, also, the character of the service, and the degree of compensation which would, under like circumstances, command similar relief. I shall decree that the libellants receive one-tenth part of the value of the vessel and cargo, as appraised. I might feel supported by authority in giving a larger compensation. Lord Stowell allowed a king's ship, for saving a merchantman, one-tenth of ship, cargo and freight. The Mary Ann, 1 Hagg. Adm. 158. Judge Hopkinson allowed above one-ninth of all saved to pilots, where the services were very trivial, and not of indispensable necessity to the vessel. Hand v. The Elvira, before cited. But the value of the property saved in this instance, makes, in my estimation, the compensation to the libellants, if it is fixed at one-tenth, adequate for the services rendered. The share to be allotted to the apprentices is not to be paid to their master, but to them individually. Mason v. The Blaireau, 2 Cranch [6 U. S.] 239, 270. Decree accordingly, with taxed costs to the libellants, and $50 for counsel fees.

NOTE. This case was taken, by appeal, to the circuit court, where the decision of this court was reversed. It is understood that that court held that the danger in which a vessel may be, does not lessen the duty of a pilot to devote himself, as such, to her rescue; that when a vessel is in distress, and is found in that situation by pilots on their cruising ground, it is their duty, as pilots, to bring her into port; that if their services have been extraordinary, they are entitled to extra pilotage therefor, to be determined according to the laws of the state of which the port out of which they cruise is a part; and that the laws of the states in relation to pilots are adopted by congress, and supply the rule of reward to those officers. It was admitted that pilotage was of admiralty jurisdiction, and that pilots might be salvors when they went beyond the duties imposed upon them by the statute under which they acted. [Case No. 17,300.] The points involved in this case have since been before the supreme court of the United States, in the case of Hobart v. Drogan, 10 Pet. [35 U. S.] 108, and the opinion of the district court, as here presented, is believed to be in harmony with the law as now understood.

NOTE [from 7 N. Y. Leg. Obs. 97]. The following decisions, respecting the admiralty jurisdiction of the United States courts, and the rights of pilots as salvors, have been made since the delivery of the above opinion: Waring v. Clark, 5 How. [46 U. S.] 451. 6 How [47 U. S.] 344; Hobart v. Drogan, 10 Pet. [35 U. S.] 108; The General Palmer, 2 Hagg. Adm. 177, 178; The Funchal, 3 Hagg. Adm. 386, note; The Elizabeth, 8 Jur. 365; The Frederick, 1 W. Rob. Adm. 17; The Hebe, 2 W. Rob. Adm. 246; The Cumberland, 9 Jur. 191; The Dosseitei, 10 Jur. 866; New Jersey Steam Nav. Co. v. Merchants' Bank, 6 How. [47 U. S.] 378.

## Case No. 17,298.

### The WAVE.

[Blatchf. Pr. Cas. 148.] [1]

District Court, S. D. New York. April, 1862.

#### CONDEMNATION OF PRIZE—PROCEDURE.

1. Vessel and cargo condemned as enemy property, and for a violation of the blockade.

2. The rules of practice in admiralty are the basis of practice in prize in our national courts.

BETTS, District Judge. This vessel and cargo were captured, as prize, off Boca Chica, and the coast of Texas. on the 1st of February, 1862, by the United States ship-of-war Portsmouth. The vessel was regarded as unfit for a voyage to a Northern port, and remains in possession of the captors. The cargo was transmitted to this port on board the prize steamer Labuan, and the vessel and cargo were here libelled, on the 27th of March, for condemnation as prize. Due service of process of attachment having been made thereon, and no person intervening for the same, default has been prayed for and ordered, and, on the proofs submitted to the court, a decree of condemnation is moved against the vessel and cargo. Prize Rule 24; Dist. Ct. Adm. Rules 35, 184; Sup. Ct. Adm. Rule 46. The rules of practice in admiralty being the basis of the practice in prize in our national courts, and having been ordinarily, in the decisions of this court, referred to summarily as the fundamental authority in that respect, it is deemed appropriate to cite those rules textually: "As soon as may be convenient after the captured property shall have been brought within the jurisdiction of this court a libel may be filed, and a monition shall thereupon be issued, and such proceedings shall be had as are usual in conformity to the practice of this court in cases of vessels, goods, wares, and merchandise seized and forfeited in virtue of any revenue law of the United States." Prize Rule 24, May term, 1861; Ben. Prac. 302. "On proclamation, after due return of process, the libellant shall be entitled to a decree of default or contumacy, according to the nature of the case, and the three proclamations heretofore used are abolished." Dist. Ct. Rules Adm. 1838, rule 35; Ben. Prac. 364. "All rules applicable to the service of, or proceedings in relation to, process in plenary causes in admiralty shall equally apply to process on informations." Dist. Ct. Rules Adm. rule 184; Ben. Prac. 385. "In all cases not provided for by the foregoing rules, the district and circuit courts are to regulate the practice of the said courts, respectively, in such manner as they shall deem most expedient for the due administration of justice in suits in admiralty." Sup. Ct. Rules Adm. rule 46; 3 How. 13; 1 Stat. 276, § 2; 5 Stat. 518, § 6.

The schooner belonged to a Confederate state, and sailed on January last. under a rebel flag, from New Orleans. The master and crew were from the same place. and knew that the port

1 [Reported by Samuel Blatchford, Esq.]

was blockaded by the United States at the time. She sailed from that port for Brazos Santiago, with a cargo of sugar, tobacco, and rice, both vessel and cargo being owned in New Orleans. All the letters on board of the vessel were thrown overboard before her capture, all but one of them being directed to one Kennedy, of Brownsville, and the.master was to deliver the cargo according to his directions. The vessel was built at Wilmington, North Carolina, and registered December 26, 1861, at New Orleans, as owned by citizens of that place, in the name of George McGregor, agent of the Calhoun Marine Company. The manifest of the cargo bore the same date, and was in the name of the same marine company, and was sworn to on the same day at the New Orleans custom-house, and the vessel was then cleared for Brownsville, Texas. The proofs are clear that the capture was wholly enemy property, and had intentionally violated the blockade of New Orleans. The retention of the vessel for the use of the government was a matter at the sound discretion of the captors, her value being previously appraised and deposited in court. Upton's Prize Prac. (3d Ed.) 437. Judgment of condemnation is accordingly rendered against the vessel and cargo.

=====

## Case No. 17,299.

### The WAVE.

[Blatchf. Prize Cas. 329.][1]

District Court, S. D. New York. Feb. 28, 1863.

PRIZE PROCEEDING—CONDEMNATION OF CARGO—DISCHARGE OF VESSEL.

1. The vessel was, after her capture, appropriated to the use of the United States, and was not sent into port. Her cargo was sent in by another vessel, and was arrested in this suit. None of her company were sent in as witnesses. A person present at the capture was, by order of the court, examined as a witness.

2. Cargo condemned for a violation of the blockade.

3. Vessel discharged for want of legal arrest and prosecution.

BETTS, District Judge. The vessel and cargo above mentioned were captured, as prize, June 27, 1862, in Mississippi Sound, by the United States brig Bohio; and, the vessel not being deemed seaworthy, the captors transmitted the cargo found on board of her to this port for adjudication. On the return of process of attachment against the cargo, September 2, 1862, the United States attorney moved for and obtained a decree by default condemning the same as forfeited. He also, on July 29, applied for and obtained, for cause then shown, an order of the court to examine Dewitt Kells, a person present at the aforesaid capture, but not

¹ [Reported by Samuel Blatchford, Esq.]

one of the company of the said prize vessel, as a witness in preparatorio in this suit. That examination was accordingly made by one of the prize commissioners July 31, 1862, and filed September 9 thereafter, and is now submitted to the court, and final judgment of condemnation and forfeiture of the said sloop and her cargo, as prize, is prayed by the United States attorney thereupon. The witness testifies that the capture was made as alleged in the libel; that the prize was immediately thereupon, by the order of Senior Officer Hitchcock, of the Susquehanna, appropriated to the use of the gun-brig Bohio, and was never brought into this port; that the cargo seized was, by order of the said Hitchcock, transported to the prize-steamer Anne, and brought to the city of New York; that the seizure was made because the vessel and cargo were Confederate property, and were bound from Mobile, a blockaded port, to Pascagoula, an enemy's port; that the capture was witnessed by him; that there were only four persons on board of the captured vessel; that they were of a low class, and were not brought to this port; and that Pascagoula was a place then under blockade. No papers were found on board of the captured vessel. The return made by the marshal, on the warrant of attachment, is, that he attached the Wave and her cargo. This, on the proofs, was clearly only so as to the cargo, which was present and within the reach of the process; but the process could be served only symbolically on the sloop, as there is no evidence of an appearance in her behalf, nor is any legal proof furnished for omitting to bring to this port the persons apprehended with the vessel, nor that decree of proof adequate to show that she was enemy property, or had violated the blockade. As to the cargo, that being held under actual custody by the court, the monition issued on such seizure, and legally served, and not replied to, furnishes prima facie evidence of the truth of the allegations made against it by the prosecution. That character of proof is augmented by the testimony of the witness present, that the cargo was captured by the libellants in the act of being transported from one blockaded port to another. The default is adequately sustained thereby, so far as to entitle the libellants to demand the full confiscation of the cargo. The cargo is, accordingly, ordered to be confiscated, and the sloop is acquitted in the suit, for default of legal arrest and prosecution as to her. The case of The Joseph H. Toone [Case No. 7,541], in this court (Oct. term, 1862), is in point, and presents the authorities upon which the decree in that case rested. Let there be a decree for the forfeiture of the cargo, and the discharge of the vessel for want of prosecution.